IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| Mid-Am Building Supply, Inc. | ) | |
| 1615 Omar Bradley Drive | ) | |
| Moberly, MO 65270 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| East Side Lumberyard Supply Co., Inc. | ) | JURY TRIAL DEMANDED |
| 721 East Herrin Street | ) | |
| Herrin, IL  62948-3344 | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, for its Complaint, states as follows:

### Allegations Common to All Counts

#### Parties

1.      Plaintiff Mid-Am Building Supply, Inc. ("Mid-Am" or "Plaintiff"), is a Missouri

Corporation in good standing with a principal place of business at 1615 Omar Bradley Drive,

Moberly, Missouri 65270.  Mid-Am is a marketer in the United States of among other products,

metal fasteners, namely nails, screws and staples.

2.      Defendant East Side Lumberyard Supply Co., Inc. ("East Side" or "Defendant")

is, upon information and belief,  an Illinois Corporation with a principal place of business at 721

East Herrin Street, Herrin, Illinois  62948-3344.

**Jurisdiction and Venue**

3.     This is an action for trademark infringement, trade dress infringement and unfair competition under the Federal laws provided for by the Lanham Act, 15 U.S.C. §§ 1051 through 1128, and for unfair competition under the laws of Missouri and Illinois.

4.     This Court has jurisdiction under the provisions of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a)-(b), 1367 and the principles of supplemental jurisdiction.

5.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

6.     This Court may exercise personal jurisdiction over all parties.

**The Mid-Am Logo and Trade Dress**

7.     Plaintiff has been in the business of selling, among other goods, metal fasteners, namely nails, screws and staples, since at least as early as 1967.  Plaintiff distributes its products to lumberyards, home centers and other retailers which, in turn, sell the products to the ultimate users.

8.     In early 2005, Plaintiff designed a new logo and trade dress to use in connection with its metal fastener products.  Copies of this logo and trade dress (hereinafter "Mid-Am Logo" and "Mid-Am Trade Dress") are attached as Exhibit 1 and incorporated by reference.

9.     Plaintiff first used its logo in November 2005 in connection with the sale of its metal fastener products.  The Mid-Am Logo consists of:

      a.  a blue banner with an arched bottom;

      b.  on the upper left there is an oval cut out of the blue banner;

      c.  a white space between the oval and the banner;

      d.  a contrasting color stripe along the arched bottom of the banner; and

2

e. both the contrasting color stripe and the oval change color depending upon the type of the fastener.

10.   The Mid-Am Trade Dress consists of the following:

a. The Mid-Am Logo as described above, with the word mark for which the logo is the background appearing on the right side of the banner in white print against the logo's blue color;

b. The Mid-Am Logo appears on a white label in one of two sizes.  For the smaller version, the white label form a border on all four sides of the Mid-Am Logo, with more white showing under the arched bottom of the Mid-Am Logo. On the larger label, the attributes of the product appear in bullet point form in blue lettering below the Mid-Am Logo.

c. The oval and stripe that appears in the Mid-Am logo are color coded by the type of fastener being sold in the packaging.  The color scheme, adopted at random by Mid-Am, includes:

    1)     Green for deck screws;

    2)     Red for drywall screws;

    3)     Orange for general construction or general use nails;

    4)     Yellow for roofing nails; and

    5)     Powder blue for galvanized nails.

11.   Plaintiff has sold its metal fasteners using the Mid-Am Logo and Mid-Am Trade Dress in interstate commerce since November 2005.  The Mid-Am Logo and Mid-Am Trade Dress have been used in connection with the goods in the states of Arkansas, Colorado, Illinois,

Indiana, Iowa, Kansas, Missouri and Oklahoma.  The Mid-Am Logo is also the subject of a

pending application before the United States Patent and Trademark Office that was filed on

April 13, 2010.

12.     Plaintiff sells its fasteners with product packaging bearing the Mid-Am Logo and

Mid-Am Trade Dress in various size containers, including one pound, five pound, twenty-five

pound, thirty pound and fifty pound packages.

13.     Plaintiff's fasteners sell in a range of suggested retail price from approximately

$1.40 to $258.00, depending upon the type of fastener and the size of the packaging.

14.     Plaintiff has spent considerable amounts of time, effort and money in promoting

its fasteners sold in connection with the Mid-Am Logo and Mid-Am Trade Dress and in

establishing goodwill in its logo and trade dress.

15.     Plaintiff's Mid-Am Logo and Mid-Am Trade Dress are distinctive and/or have

acquired distinctiveness through secondary meaning in the relevant marketplace.

### The East Side Lumberyard logo and trade dress

16.     East Side is in the business of selling building products including metal fasteners,

namely screws, nails and staples.

17.     Like Mid-Am, East Side distributes its products in interstate commerce to

lumberyards, home centers and other retailers which sell the fasteners to the ultimate user.

18.     Beginning well after November 2005, East Side began selling metal fasteners in

product packaging with a logo that, like the Mid-Am Logo had a blue banner, arched bottom and

cut out oval in the right hand corner.  A copy of the label used by East Side containing the East

Side Logo is attached as Exhibit 2 and incorporated by reference.

4

19.     The label which East Side is using on its fastener containers (also shown on Exhibit 2) contains the East Side logo as well as the identical color coding scheme used by Mid-Am and a layout that is substantially similar to the label used by Mid-Am.  While East Side substitutes its own name for the BUILDERS CHOICE mark used by Mid-Am, the overall appearance of the logo and trade dress used by East Side in connection with its fasteners is substantially similar if not identical to that used by Mid-Am since 2005.

20.     The logos and trade dress  used by East Side and shown on Exhibit 2 are so similar to the Mid-Am Logo and Trade Dress that was created by Mid-Am in 2005 that, on information and belief, East Side intentionally picked its current logo and trade dress for its fasteners to be substantially similar to Mid-Am's logo and trade dress with the intent to trade on the goodwill and consumer identification associated with the Mid-Am Logo and trade dress.


**Count I—Trademark Infringement and Unfair Competition Under 15 USC §1125**

21.     Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 20 as if fully set forth in Count I.

22.     The use in interstate commerce by Defendant of the logo and trade dress shown in Exhibit 2 in connection with metal fasteners is likely to cause confusion or mistake or deception as to the source, affiliation, connection or association of Defendant's products with respect to Plaintiff's fasteners sold in connection with the Mid-Am Logo and Trade Dress as shown in Exhibit 1.

23.     Purchasers are likely to purchase Defendant's fasteners based on the false association with Plaintiff's product, thereby resulting in a significant loss of sales to Plaintiff.

24.     Plaintiff has no control over the quality of goods offered by Defendant and, because of the confusion as to source engendered by Defendant's wrongful conduct, Plaintiff's valuable goodwill in its Mid-Am Logo and Mid-Am Trade Dress is and has been damaged by Defendant's actions.

25.     Defendant's unfair competition and infringement of Plaintiff's Mid-Am Logo and Trade Dress has been knowing, willful, deliberate and designed specifically to trade upon the goodwill associated with Plaintiff's product and its logo and trade dress.

26.     These wrongful acts have caused and will continue to cause Plaintiff substantial injury, including loss of customers, damage to its goodwill, confusion of existing and potential customers, injury to its reputation, and diminution of the value of its Mid-Am Logo, Mid-Am Trade Dress and products sold in connection therewith.

27.     The harm to Plaintiff that these wrongful acts will cause is both imminent and irreparable, and the amount of damage sustained by Plaintiff will be difficult to ascertain if these acts are permitted to continue.

28.     Plaintiff will suffer irreparable harm to its reputation and goodwill in fastener industry due to Defendant's infringement of Plaintiff's logo and trade dress.

29.     Defendant's actions constitute a violation of 15 U.S.C. § 1125.

### Count II—Trade Dress Infringement Under 15 USC §1125(a)

30.     Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 29 as if fully set forth in Count II.

31.     The Mid-Am Trade Dress, as shown in Exhibit 1, is inherently distinctive or in alternative has acquired distinctiveness.

32.     The Mid-Am Trade Dress is not functional.

33.     The East Side trade dress used by Defendant in association with the East Side fasteners, as shown in Exhibit 2, is likely to cause confusion or mistake or deception as to the source, affiliation, connection or association of the East Side fasteners with respect to the Mid-Am Trade Dress for the Mid-Am fasteners.

34.     Purchasers are likely to purchase the East Side fasteners based on the false association of the East Side trade dress with Plaintiff's Mid-Am Trade Dress, thereby resulting in a significant loss of sales to Plaintiff.

35.     Plaintiff has no control over the quality of goods offered by Defendant and, because of the likelihood of confusion as to source or association engendered by Defendant's appropriation of Plaintiff's trade dress, Plaintiff's valuable goodwill in its trade dress is and has been damaged by the Defendant's actions.

36.     Defendants' unfair competition and infringement of Plaintiff's trade dress has been knowing, willful, deliberate and designed specifically to trade upon the goodwill and consumer identification associated with Plaintiff's trade dress.

37.     These wrongful acts have caused and will continue to cause Plaintiff substantial injury, including loss of customers, damage to its goodwill, confusion of existing and potential customers, injury to its reputation, and diminution of the value of its trade dress and products.

38.     The harm to Plaintiff that these wrongful acts will cause is both imminent and irreparable, and the amount of damage sustained by Plaintiff will be difficult to ascertain if these acts are permitted to continue.

39.     Plaintiff will suffer irreparable harm to its reputation and goodwill in the building supply industry due to Defendants' infringement of Plaintiff's trade dress.

40.     Defendants' actions constitute a violation of 15 U.S.C. § 1125(a).

### Count III—Common Law Unfair Competition (Missouri Common Law)

41.     Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 40 as if fully set forth in Count III.

42.     Plaintiff has built a substantial commercial advantage through consistent use and promotion of the Mid-Am Logo and Mid-Am Trade Dress.

43.     East Side's unlawful activities undermine Mid-am's reputation by exploiting, without consideration or authorization, the goodwill associated with the Mid-Am Logo and Mid-Am Trade Dress, on which Mid-Am has expended substantial time, investment and resources.

44.     East Side has falsely designated or associated its products as being derives or affiliated with those of Mid-Am by East Side's use of a logo and trade dress confusingly similar to those of Mid-Am, and the unauthorized use is likely to cause or has caused confusion, mistake or deception as to the source, affiliation , connection or association of East Side with Mid-Am or Mid-Am's products.

45.     East Side's conduct constitutes unfair competition under the common law of the State of Missouri.

46.     Mid-Am has been irreparably harmed in its business, and Mid-Am will continue to suffer irreparable harm unless East Side is restrained and enjoined from making false designations of origin, false descriptions or misrepresentations related to the Mid-Am Logo and Mid-Am Trade Dress.

47.     Mid-Am has been monetarily damaged by East Side's intentional and willful actions related to the Mid-Am Logo and Mid-Am Trade Dress.

48.     Mid-Am is also entitled to an award of punitive damages as the result of East Side's willful acts.

## Count IV–Unfair Competition Under Illinois Law

49.     Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 48 as if fully set forth in Count IV.

50.     Plaintiff has built a substantial commercial advantage through consistent use and promotion of the Mid-Am Logo and Mid-Am Trade Dress.

51.     East Side has falsely designated or associated its products as being derives or affiliated with those of Mid-Am by East Side's use of a logo and trade dress confusingly similar to those of Mid-Am, and the unauthorized use is likely to cause or has caused confusion, mistake or deception as to the source, affiliation , connection or association of East Side with Mid-Am or Mid-Am's products.

52.     East Side's activities constitute acts of consumer deception that are deliberately calculated and designed to confuse the citizens of the State of Illinois and elsewhere in the United States as to the source and origin of East Side's goods.

53.     East Side's actions constitute unfair competition under the state law of Illinois under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2).

54.     By reason of the acts complained of herein, East Side has engaged in and will continue to engage in unfair competition with Plaintiff and Plaintiff and Illinois consumers have been irreparably harmed and will continue to suffer irreparable harm unless East Side is restrained and enjoined from its continued acts of unfair competition.

55.     Mid-Am has been monetarily damaged by East Side's malicious, reckless, intentional and willful actions related to the Mid-Am Logo and Mid-Am Trade Dress.

56.     Mid-Am is also entitled to an award of punitive damages as the result of East

Side's willful acts.

### Count V-Violation of the Illinois Uniform Deceptive Trade Practices Act

57.     Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 56 as if fully set forth in Count V.

58.     East Side has wilfully and deceptively diverted Plaintiff's customers, thereby depriving Plaintiff of sales and revenue that Plaintiff otherwise would have had.

59.     Each of Defendant's acts complained of herein constitute deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a)(1), (2), (3), (5), and (12).

60.     Unless enjoined, East Side will continue to misappropriate the business and goodwill of Plaintiff and divert Plaintiff's customers by continuing to engage in acts which constitute deceptive trade practices.

WHEREFORE, Plaintiff prays for an Order and Judgment as follows:

A.      Permanently enjoining Defendant, its agents, servants, employees, successors, assigns, and all persons in active concert or participation with them from manufacturing, marketing, selling or offering for sale any goods bearing or in packaging bearing the logo and trade dress shown in Exhibit 2, or any colorable variation of the logo and trade dress shown in Exhibit 1 in connection with fasteners, building supplies or any other related goods or services, or otherwise infringing Plaintiff's logo and / or trade dress, unfairly competing with Plaintiff and from in any way associating Defendants' goods and services with Plaintiff in accordance with 15 U.S.C. § 1116;

B.      Confiscating all material bearing the infringing logo and trade dress, and offering it up for destruction in accordance with 15 U.S.C. § 1118;

C.      Ordering an accounting of Defendant's profits from its use of the logo and/or trade dress shown in Exhibit 2;

D.      Awarding Plaintiff compensatory damages, including disgorgement of Defendant's profits, full costs, treble damages and reasonable attorneys fees in accordance with 15 U.S.C. § 1117(a) and (b) and 815 ILCS 510/3 ;

E.      An award of punitive damages to deter similar conduct in the future; and

F.      Awarding Plaintiff such additional and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: June 3, 2010

Michael Elbein (*pro hac vice pending*)
Andrew G. Colombo (*pro hac vice pending*)
Matthew B. Walters (*pro hac vice pending*)
HOVEY WILLIAMS LLP
10801 Mastin Boulevard, Suite 1000
84 Corporate Woods
Overland Park, Kansas 66210
Tel: (913) 647-9050
Fax: (913) 647-9057
Email: **mme@hoveywilliams.com**
Email: **agc@hoveywilliams.com**
Email: **mbw@hoveywilliams.com**